Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 162505, United States v. Gabriel Galindo-Serrano. Good morning, Your Honor. It may please the Court, Mauricio Hernandez-Arroyo for appellant Gabriel Galindo-Serrano. I would ask one minute for rebuttal. Yes. And I'll only use it if necessary. In the short time that I have today, I'd like to address first the District Court's 600-month, 50-year sentence, was procedurally and substantially unreasonable. The issue, we believe, standard review is finding facts for clear error and legal conclusions of de novo, and it's a two-pronged argument. First, that the Court erred when it denied defendants a motion to continue the sentencing hearing when Galindo appeared at a sentencing with wrist self-mutilated marks that the defense counsel assisted the public defendant noticed, and through history raised serious concerns on whether or not there was a competency issue. The Court first indicated, I have no indication that there's any problems, mental problems, that's it, sentencing page 23. We know that that's not exactly correct. The Court stated that he would sentence the defendant, but he also ordered that a psychological evaluation be done, and he stated the following, I'm going to have him sent to Butler, North Carolina, to be evaluated. Once I receive the report from the evaluation, then I will consider the matter, and we can come back together and resentence him, and resentence him, resentence him or proceed accordingly, depending on the evaluation, what it says. The assistant federal public defender raised concerns about jurisdiction, if the report came after the time for appeal, and so there was some colloquy, some discussions about filing a motion to extend the time for appeal, which was done and the Court granted. So four and a half months later, on November 23, 2016, a 23-page criminal responsibility evaluation was received, sealed with the Court. Now we know that the findings of that report, and we're not challenging that, found that the defendant had no mental disease or defect underneath the law, and that he had the ability to appreciate the rolefulness of his conduct at the time of the offense. The problem is, is that upon getting that report, all we know is the following, that there was never any consideration of the report by the Court. The parties did not get back together. He was not resentenced. How do we know there was no consideration by the judge? What do we know about what happened in the aftermath of the report being received? We do not know. We don't know anything about what happened. We do not. There is nothing in the record, other than procedurally, that when, and this is not a non-issue, but we do not know yet. What we do know is that when the issue of the report came and there was a notice of appeal that was five months later, this Court, in its first order, in this opening case, did in order to show cause to issue an issue of untimeliness because it was well beyond the time, even the 30 days that the Court gave, and that's a non-issue, but I think it reflects the procedural posture of this case where it's unique in that there was an order to show cause. Government replied. They cross-moved to dismiss. We cross-moved. We replied. And at the same time, the assistant public defender filed in the district court a 2255 or asking for vacature of the sentence. Subsequent, fast-forward, Judge Torreya issued an order that the government withdrew its motion to dismiss, and it became academic, and then the judge in the district court decided that motion for resentencing as academic, or he did not, he denied the motion. That's all we know. So clearly the contents of the report is a real powerful narrative of this young man, Galindo's young and troubled life, and so we think that was it putting the cart before the horse? Was it sentencing? And just as an abundance of caution, we don't know, and that's a problem. I think it was based on the Court's representation. There was more detail in that report about the defendant's very troubled life, but there was some recognition of that troubled life at the time that the judge imposed the sentence that he did. Isn't that true? So very little, and I would say there is one issue of, for example, the public defender saying, look to page 15, paragraph 83, and it's attention deficit disorder, and some language in the PSR, which was not objected to, only about his very young age and problems with treatment, and the court did mention at some point afterwards he said, after the way he said it, there was no mental problems, he did say that, in fact, he had this disorder. The government in their motion also alleges that there's a history of problems that was considered, but in fact the PSR does, if it mentioned one disorder, we know that the report had 11 disorders. What was the report being ordered for? It clearly was a competency to stand trial or to be. So I guess I'm just not, I mean, take most favorable reading of the record to you, the district court didn't then consult the report in issuing the sentence. He issued his. That would be the most favorable reading of the record to you, is that the district court didn't read that report about competency in rendering the sentence, right? Correct. But you're not arguing that in consequence of that report he was incompetent to be sentenced. No. So what you're saying is that in consequence of the competency report, it was error for the district court to sentence a competent defendant without having consulted the facts in the competency report. Correct. Is there authority suggesting that that's error? The second prong, taken together in totality of the circumstances, says that the 3553 factors were not considered in the front end, although there's one mention of one attention deficit disorder. But you're not answering my question, which is I understand if you have a separate argument that they didn't follow the 3553 factors. I get that. But I take the force of your argument to be that it's error if you order a competency report. Even if the competency report shows the defendant to be competent to be sentenced, to not consider the contents of the competency report in rendering the sentence. Correct, Your Honor. And I'm asking you, is there authority for that proposition? Under the fundamental fairness, having the totality of the circumstances being put on notice, ordering that and saying he's going to do that, I would think that the court would follow what it said it would do. But he said he was going to follow it for purposes of determining competency. Correct. But you're saying he had to follow the competency report for purposes of determining the sentence rather than relying on the PSR. In both cases, he would take it for... In either event, it's not as if you separately put forward evidence apart from what was determined in the competency report with respect to the 3553 issues by developing a similar narrative that wasn't then considered. Because you were just now saying it's the competency report that's the base. But I'm just wondering what authority there is for suggesting that that's the kind of error that is enough to, when we look at the whole record here, that we should conclude, you know, we can't just assume the district court would give the same sentence. And I just don't know that I've seen a precedent that suggests that. I don't have a specific authority. I just know that in terms of practice, this is a very unusual case procedurally. I think on the facts of these cases and the procedural history really sent this case in a... See, I guess what concerns me, one way you could understand it would be from the district court's perspective, potentially at least, it can't sentence if the person's not competent to be sentenced, so it wants a report about competency. Okay. If there's no competency issue, the question then becomes what should the sentence be for the competent defendant? And if defense counsel isn't saying to the district court, in determining what the sentence should be for a competent defendant, you need to make that with reference to facts that are in the competency report because they bear on what the appropriate sentence would be beyond what the PSR says. There's no evidence defense counsel said that to the district court here. Only to the effect that there was a history of problems, it was visible signs, the whole rationale of why... But all of that we know the district court did say. It did. I would say that what we know now, if we knew now, what we know then, I believe that it's an issue that under looking at these procedural problems which was raised, they're both combined, and I think that my time is up, but at the same time, I think that it was an error on both ends, and I think that the sentence would have been different knowing what we know now. And again, it was filed under seal, the report, and so we generically mention it and without specificity. Counsel, before you step back, do you want to take a minute and say something about your argument on the admissibility of the confession? Yeah, very briefly. The standard of reasonable and necessary, I would say that it was heard. It's not a waiver. I don't believe that U.S. Casey cited, and I believe Judge Byron was on that case. That was a very intentional decision where the defendant admitted to relinquish and not raise the suppression hearing in the district court. Here, there was an argument. The judge asked the public defender, look, although this case had been delayed. Counsel, I don't think you should worry about the waiver issue. Right, it's a forfeiture. So I think in plain error, I think that this person with all his problems in terms of not having written his confession, it wasn't taped. This is a federal investigator's notes that was signed subsequently. There's nothing real clear in the error that he raised right to counsel. At the same time, this person who was found to be on drugs when he was arrested, and knowing everything, I believe that there was error, plain error, and that would have affected the outcome of the case in that this is a case that there was no defense, no witnesses, a lot of nothing, but at the same time, that confession was very powerful notwithstanding. Counsel, can you just explain? I'll ask the government the same question. Even if there was a finding that the delay was not reasonable or necessary, it doesn't follow from that that there has to be suppression. Isn't that correct? Isn't voluntariness still sort of the touchstone issue here, or do you feel that suppression would follow automatically, if you will, if there's a finding that the delay was not reasonable or necessary? Well, so I think that if the suppression that should have been granted, it would have still been excluded. I think that the reasoning by the court, the rationale why he denied it initially was wrong, but then he corrected it, and he was saying he can go and sleep and he can go rest, and he was protecting his safety as opposed to his rights. We believe that under the facts of these cases and what we know now about this defendant, that once they would have found to be unreasonable and unnecessary, since there was a larger delay than the six hours, and, in fact, the facts of this case warn. Before you sit down, could you just on the prejudice, so I understand the evidence against your client, aside from the confession, what evidence was there against your client? There were, so I did say that we don't know what the outcome would be, but we believe that there would be, it affected his substantial rights, so there was three eyewitnesses. There was a police officer who he had had a fender bender with, and there were two eyewitnesses. Who were the two victims? Of the two separate carjackings, and so those are, you know, those were. And was there physical evidence as well? In fact, yeah, there was a delay in this case substantially for forensic evidence, and so there was a rape kit and there was a bunch of other physical evidence. So in light of the eyewitness testimony of the victims, the police officer testimony, and the physical evidence, and the absence of any indication that your client knew the victims, what is your reason for saying that the confession would have changed the outcome? Well, I mean, he did allege a couple of things. One is that it was not only consensual, but he did know the victim, and there was a motion to prosecute, which was a non-issue, really. But at the same time, it was some of the same in one of them. In the second, where it was more violent in the rape or the sexual aggression, we believe that notwithstanding those eyewitnesses, the public defender did not put on anything knowing that this confession was allowed. And I think that it would have changed the strategy and what, if anything, he would have been able to do because there was a lot of deficiencies in terms of timeliness, in terms of other types of failures. So we think that at the end of the day, it would have changed the strategy or the outcome of the case. Thank you. Good morning, and may it please the Court. Counsel, in the limited time that you have, I just want to be clear that one of the things that I'm concerned about, and I've heard questions to this effect already this morning, is whether our decision in Beltran stands at all after Corley. So I hope at some point you're going to get to that. Your Honor, I would present a 20-8J on that. I'm not sure that I have a full and complete answer on that, Your Honor. Your Honor, as the District Court noted, the violence inflicted upon the victims in this case cannot go unnoticed or overlooked. After holding one victim hostage and raping her at gunpoint, Appellant Galindo left her bleeding and alone as he drove off in her car. Considering these facts, Galindo's mental health, and other 3553A factors, the District Court imposed a substantively and procedurally reasonable sentence. Galindo's co-defendant's shorter sentence does not... So we want to talk about the suppression issue, or at least I do. So the standard in Jaquez, or Jacques, considering the Federal Rules of Criminal Procedure 5A, the McNabb-Mallory Rule, and the 18 U.S.C. 3501C, Safe Harbor, created, Jacques integrates all of those previous rules into a two-step format. So the statements within six hours after arrest fall in the safe harbor and are admissible, and statements after the six hours, the District Court must determine if the delay is reasonable or unnecessary under the McNabb-Mallory cases. So as the Court found here, the real threat of the riot in the limited... How could the delay have been reasonable when you went to a magistrate during the time period? Just as in the case of Casual Correa, Your Honor, that individual was very similar to this one. He was arrested at 630 to 645 the night before. He was held in MDC overnight, and the government went to the magistrate before... Is that a case of ours, or is that a District Court case? That's a case of ours in 2017, Your Honor. By the First Circuit? Can I grab the case? Sure. Apologize, Your Honor. I don't have it in front of me, but I believe it's in front of me. So in that case, it was also found reasonable that the defendant wasn't brought until the following Monday, which was the next business day, which is the same day. How can it be reasonable to not have time to go to a magistrate when you went to a magistrate on a different issue? Because they went to the magistrate in pursuit of the things that they were given. Why didn't they just bring him with them to the magistrate and say, while you're doing that, we also have this person who we now would like to prevent? Well, there were a limited number of agents, Your Honor, and some of them were working on the search warrant, so they were going to get the search warrant so they could do the search. And so in order to do that, they couldn't then be booking him and processing him because they were doing the search instead at night to ensure that that evidence was preserved. So the record shows there was just no agent available? The record shows that there were limited personnel. Don't there have to be no agent available? That does not appear to be the standard, Your Honor. It's a consideration that there's limited personnel. The relevance of the limited personnel has got to be because there's no agent who could do the task. Well, it's not specifically clear from the record that there is no agent available. Why would we think that if there, put it this way, if there is an agent available, what would be the reason for not using that agent to do this task? I'm not saying that there was an agent available, Your Honor. I'm just saying it's not clear from the record that there was no agent available. Whose burden is it to establish that there was no agent available? I don't believe that there has to be no agent available according to the case file, Your Honor. Who has the burden of showing that the delay was reasonable? We have the burden of showing that the delay was reasonable. How can you show the delay was reasonable if you cannot establish that there was no agent who could do the task? Because we show that the agents were involved in other things. You show that some of them were, and you also show that maybe there was one who was available. So I don't see how you can meet the burden in that situation. That's what bothers me. It's the totality of the circumstances for the delay, Your Honor. So you would have to look at all of the other factors. So considering that there were a limited number and they were doing other things, we don't have direct proof that there was no agent available, but we have proof that the other agents were likely involved in other things. Does that answer your question, Your Honor? I don't even know. Does the record show that all of the other agents were likely involved in other things? It shows that there were several other activities going on at the same time, Your Honor, and it shows that there were a limited number of agents. So those two facts together show that the agents can produce the inference that the agents were likely involved in those other things, in assisting the PRPD with the real threat of an impending riot, and in pursuing the search warrant and the search thereafter, Your Honor. And since it was late into the evening, it's on the record that they went, processed the evidence, and went home to sleep and came back and took the defendant out in the next morning to go see, to be booked and then to the magistrate, Your Honor. So it is our position that the delay was necessary, as the district court found, considering the factual similarities between Castro-Correa and the considerations that the district court looked into, the real threat of the riot, the need to prepare documents, book the defendant, and the presale services, which are all considered admin concerns, which is a valid reason for delay under JOC. Counsel, could you answer my question that I posed earlier? What happens if there is a finding or if we were to conclude that it was an error for the district court to find that the delay was reasonable or necessary? What follows from that? Does it follow that the confession should have been suppressed, or is there an additional inquiry that has to be made? Under JOC, it's applying the McNabb-Mallory rule, saying that it still survives after 3501. So if the delay is unreasonable and unnecessary under the McNabb-Mallory rule, the confessions would be inadmissible. However, as Your Honor pointed out, voluntariness is still a cornerstone, so there would have to be a voluntariness analysis. Here, the confessions were voluntary, despite defendant's alleged limited mental state, because there was no allegation of police coercion, which is required, as the court cited in Palmer. Additionally, as the defendant... Does it follow that an unreasonable and unnecessary delay of more than six hours doesn't result in suppression if you can nonetheless show that it was voluntarily given? The case that there needs to be a voluntary confession, Your Honor? No, the case that says even when the confession was obtained after there was a delay of more than six hours that was unreasonable and unnecessary, the confession still can be used as long as it can be shown to be voluntary. Well, looking back at the McNabb-Mallory rules, Your Honor, it would be inadmissible if there was unreasonable delay. However, separately, there still needs to be a voluntariness of the confession. So it would be inadmissible if it were delayed. However, you still have to do a voluntariness analysis. Why, if it's inadmissible, if it's delayed? Because the only thing that I'm... You say that, but then that sounds like what you're saying is, if it's an unreasonable and unnecessary delay of more than six hours, so long as it's voluntary, it's not suppressed. Is that the government's position? The voluntariness... You're asking if the voluntariness would save it if it would otherwise be suppressed? I don't have any authority to that effect, Your Honor. So that presumably would take you to a harmlessness argument. Do you have one? Harmlessness on the confessions, Your Honor? Yes. As you were discussing before, there's significant DNA evidence, and as defense counsel said, a bunch of other evidence. There's three eyewitnesses, there's DNA evidence, and the victim said that she didn't know the defendant. So all of that considered together means that the confession did not play as significant of a role in the verdict as defense counsel would argue. The statements by the defendant, the confessions were what the district court called a carbon copy of the witness's testimony. So all of that evidence had already been introduced by the time that the agents testified regarding the defendant's confessions, Your Honor. So we hold that it was harmless error at all. So I see that my time has run. May I conclude my thoughts, Your Honor? Yes. I have one minute, and I'll just very quickly say that the record in the suppression hearing showed that the three officers who testified were not involved in the arrest. They were not involved in any backup at the function of federal investigators, and there were seven to ten other agents taking care of that. And the police department of Puerto Rico were the ones who arrested him and who were securing whatever boundaries and stuff. In addition, these three federal investigators talk about they finished their job at 7 o'clock, or excuse me, at 2 in the morning. And that they just went home. And so they were not involved. They were available. And the testimony is clear in the record in terms of that they were there the next day to make those inquiries, but they had that more than room for time. Now, by 2 o'clock in the morning when they were done, he was arrested at 6. He may or may not be close to the six-hour limit, but those are facts in the record which would support that they had available resources to take the defendant to the magistrate as they were going anywhere for them. Are you saying that as of 2 in the morning the record shows that there was available resources, or are you saying that earlier than 2 in the morning they were available? I'm saying the testimony of their own three guards that were not involved said that they were concluded with what they had to do at 2 o'clock. But that's after the six hours. The arrests, if it's at 7, then it would be there. So is there any evidence in the record that shows that there were available resources to present the defendant within the six hours? In that the three guards were not involved in everything else that was happening, implicit you could say, yeah, they were available. They were working on the case. Thank you.